THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **MULTINATIONAL LIFE INSURANCE COMPANY,**<br><br>**Appellant,**<br><br>v.<br><br>**PEDRO VAN RHYN-SOLER,**<br><br>**Defendant.** | Civil No. 21-1580 (ADC) |

**OPINION AND ORDER**

**I.   Procedural and Factual Background**

Plaintiff appeals[1] from an Opinion and Order entered by the Bankruptcy Court, *In Re: Pedro Van Rhyn Soler*, **Bankruptcy Case No. 14-10211 (MCF)**; *Multinational Life Insurance Company v. Pedro Van Rhyn Soler*, **Adversary Case No. 17-00270 (MCF)**, denying plaintiff's motion for summary judgment (hereinafter, the "O&O"). *See* **ECF No. 9-2** at 285-302. In its motion for summary judgment, plaintiff challenged defendant's Chapter 7 discharge order and requested revocation of the discharge under 11 U.S.C. § 727(d).

Defendant was the co-owner of an entity called Option Health Care Network, Inc. ("OHCN"). Plaintiff's predecessor[2] executed a service agreement with OHCN. Pursuant to the

---

[1] The instant appeal was filed pursuant to 28 U.S.C. § 1334(a); 158(a); 11 U.S.C. § 301. **ECF No. 9** at 9.
[2] National Life Insurance Company.

**Civil No. 21-1580 (ADC)**                                                                                               **Page 2**

terms and conditions of the service agreement, OHCN agreed to provide third-party administration services on plaintiff's behalf. Among the O&O's undisputed facts (which plaintiff fails to dispute in the instant appeal), the Bankruptcy Court found that plaintiff was made aware (since 2012) through an audit of defendant's diversion of OHCN's funds to his personal accounts and cash withdrawals for personal benefit. *See* **ECF No. 9-2** at 287.

In 2012 plaintiff presented this finding to the Puerto Rico Court of First Instance, the Federal Bureau of Investigation ("FBI"), and the Internal Revenue Services ("IRS"). Specifically, plaintiff filed a civil suit in state court against defendant and other OHCN's executives for collection of monies, to pierce the corporate veil (presumably to pursue defendant's personal assets), damages, and other causes of actions under state law. *See Multinational Life Ins. Co. v. Option Health Care Network Inc.*, et al, state court Civil No. KAC 2012-0212. In addition, plaintiff's corporate counsel sat down with IRS and FBI agents to explain how defendant had funneled and diverted OHCN's funds to his personal benefit though, among others, credit cards, including at least one issued by American Express ("AMEX").

Defendant filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. *In Re: Pedro Van Rhyn Soler*, **Bankruptcy Case No. 14-10211 (MCF), ECF No. 1**. The Bankruptcy Court set March 16, 2015 as the deadline to object to the discharge. Plaintiff, among others, were given notice. *Id.*, **ECF No. 9**. The Office of the United States Trustee moved for an extension to object or file a motion to dismiss defendant's Chapter 7 petition. The Bankruptcy Court granted the Office of the United States Trustee's motion for extension of time. *Id.*, **ECF No. 32.**

On March 23, 2015, plaintiff (through counsel) entered a notice of appearance and requested an extension of time to file objections. *Id.*, **ECF No. 43-44.** Explaining that plaintiff's motion failed to comply with Local Bankruptcy Rule 9013(c), on March 24, 2015, the Bankruptcy Court denied plaintiff's request for extension of time. On March 30, 2015, plaintiff again moved for an extension of time. Yet, again, plaintiff failed to comply with Local Bankruptcy Rule 9013(c). On March 31, 2015, the Bankruptcy Court denied plaintiff's motion on the same grounds.

Fifteen days later, plaintiff (through new counsel) entered an appearance and filed a Proof of Claim in the amount of thirteen million dollars. According to the Bankruptcy Court's unchallenged findings, plaintiff's Proof of Claim "stems from the Plaintiff's allegations in the [state court case]." **ECF No. 9-2** at 289.[3] Thereafter, on July 16, 2015, plaintiff filed the adversary proceeding styled *Multinational Life Insurance Company v. Pedro Van Rhyn Soler*, **Adversary Case No. 15-001181.**

By filing this adversary action, plaintiff sought to oppose defendant's Chapter 7 discharge instead of filing timely objections. **ECF No. 9-2** at 290.[4] On August 11, 2015, defendant filed a motion to dismiss based on the fact that the adversary proceeding was an untimely objection cloaked as a complaint. While the motion to dismiss was under the Bankruptcy Court's

---

[3] As a matter of fact, plaintiff admits in its brief that the Proof of Claim was "supported by [its] allegations" in the state court case "*Multinational Life Ins. Co. v. Option Health Care Network Inc., et al*, state court Civil No. KAC 2012-0212," which plaintiff filed three years before defendant's bankruptcy. **ECF No. 9** at 13.

[4] Plaintiff admits as much by conceding it "filed the adversary proceeding against the Debtor to object to the entry of his discharge." **ECF No. 9** at 13. Yet, plaintiff fails to mention that it did not file a timely objection to defendant's discharge (the Court denied plaintiff's motions for extension of time to file objections to the discharge twice because plaintiff did not meet Local Rules requirements).

advisement, plaintiff moved to amend the complaint representing to the Bankruptcy Court that it had discovered new evidence including information pertaining new corporations, and other undisclosed facts. On March 10, 2016, the Bankruptcy Court dismissed plaintiff's adversary complaint holding that it was nothing more than an untimely objection to defendant's discharge. Indeed, the Bankruptcy Court reached its determination after considering that plaintiff "fail[ed] to file the adversary complaint within the statutory deadline for objection to the discharge." **ECF No. 9-2** at 290. Ultimately, the Bankruptcy Court entered an Order granting defendant (Chapter 7 petitioner) a discharge pursuant to 11 U.S.C. § 727. *See In Re: Pedro Van Rhyn Soler*, **Bankruptcy Case No. 14-10211 (MCF), ECF No. 136.**

On November 29, 2016, a grand jury charged defendant and his brother, Edgardo Van Rhyn Soler, with one count of conspiracy to commit health care fraud ("Count One"), 18 U.S.C. §§ 1347(a)(1) and 1349, one count of conspiracy to commit money laundering ("Count Two"), 18 U.S.C. §§ 1956(a)(1)(B)(1) and 1956(h), and one count of conspiracy to engage in unlawful monetary transactions ("Count Three"), 18 U.S.C. §§ 1956(h) and 1957. *See United States v. Pedro Van Rhyn-Soler, et al*, **Crim. No. 16-742 (ADC)**, **ECF No. 3.** In essence, defendant was criminally charged for having conspired to defraud the plaintiff's predecessor company, NALIC, of millions of dollars in a health care conspiracy count, and also for laundering the proceeds. *Id.*

After the passage of Hurricane María, the Bankruptcy Court issued a "General Order #17-05" extending all deadlines until November 6, 2017. On November 6, 2017, plaintiff filed a complaint seeking revocation of the discharge order in the Bankruptcy Court. *Multinational Life*

**Civil No. 21-1580 (ADC)**                                                                                                       **Page 5**

*Insurance Company v. Pedro Van Rhyn Soler*, **Adversary Case No. 17-00270 (MCF)**. Plaintiff claimed defendant obtained the discharge Order through fraud. *Id*.

On February 14, 2019, the government filed a One-Count Information against defendant and his brother charging the siblings with conspiracy to commit wire fraud in violation of 18 U.S.C. § 1343 by devising a scheme to "defraud the Commonwealth of Puerto Rico for the payment of taxes by means of materially false and fraudulent pretenses, representations, and promises." **Crim. No. 19-111 (ADC), ECF No. 3** at 2-3. In light of the Information filed at **Crim. No. 19-111 (ADC)** and pursuant to Fed. R. Crim. P. 48, the Court entered Judgment dismissing **Crim. No. 16-742 (ADC)**. *See* **Crim. No. 16-742 (ADC), ECF No. 70.**

The Information filed in **Crim. No. 19-111 (ADC), ECF No. 3** stated that the "objective of the conspiracy was for defendant (and his brother) to enrich themselves by not revealing to the Commonwealth of Puerto Rico income of $181,337.39, and the non-payment of taxes on personal expenses charged to [OHCN]'s AMEX corporate credit card in the years 2010[-2012]… [to] conceal and disguise personal expense[s]… [a]ll in violation of Title 18, United States Code, Section 371." *Id*. The siblings entered into a plea agreement and ultimately, on February 14, 2019, pleaded guilty to the criminal charges within the Information. *See* **Crim. No. 19-111 (ADC), ECF No. 8**.

On March 13, 2019, defendant filed an Amended Statement of Financial Affairs in the original proceedings for Chapter 7 relief, *In Re: Pedro Van Rhyn Soler*, **Bankruptcy Case No. 14-10211 (MCF), ECF No. 180.** On July 29, 2019, defendant also filed a motion submitting the

amended tax returns for the years 2010-2012 (the years the conspiracy described in the plea agreement lasted) to include the amount of unpaid tax debt of $28,804.00.

On November 6, 2019, defendant answered the complaint. **ECF No. 9** at 22. Thereafter, the parties began discovery. In its brief, plaintiff raises no issue whatsoever with the discovery provided by defendant. Conversely, plaintiff recognizes that the Bankruptcy Court even modified the scheduling order. The parties moved for summary judgment on January 15, 2021. The Bankruptcy Court allowed the parties to argue their summary judgment theories at a hearing held on August 18, 2021. On November 17, 2021, the Bankruptcy Court denied plaintiff's motion for summary judgment. Thus, the Bankruptcy Court denied plaintiff's request for "revocation of discharge." **ECF No. 9** at 22-23. This appeal followed.

Plaintiff first argues that the Bankruptcy Court erred "by imposing a lack of knowledge requirement inexistant under [section] 727(d)(2) and by finding that expenses and assets fraudulently concealed by [defendant] were not of interest of the Bankruptcy Estate." **ECF No. 25** at 25-40. Similarly, but presented as a separate argument, plaintiff asserts the Bankruptcy Court erred "by maintaining a Discharge… notwithstanding the false oaths of a convicted felon, by not considering [defendant]'s own contradictory positions and own admissions… which prevented and hindered the administration of the estate." *Id.*, at 32-49.

II.     **Standard of Review**

"Title 28 U.S.C. § 158(a)-(b) provides for intermediate appeals either to the district court or to the Bankruptcy Appellate Panel." *In re Redondo Constr. Corp.*, 621 B.R. 81, 82 (D.P.R. 2020).

Courts reviewing a bankruptcy appeal generally apply the "clearly erroneous" standard to findings of fact and *de novo* review to conclusions of law. *TI Fed. Credit Union v. DelBonis*, 72 F.3d 921, 928 (1st Cir. 1995); *In re Savage Indus., Inc.*, 43 F.3d 714, 719-20 n.8 (1st Cir. 1994). If the issue on appeal is limited to statutory interpretation, courts apply *de novo* review. *In re San Miguel Sandoval*, 327 B.R. 493, 506 (1st Cir. BAP 2005) (citing *Jeffrey v. Desmond*, 70 F.3d 183, 185 (1st Cir. 1995)).

### III.   Discussion

Plaintiff's appeal hinges on 11 U.S.C. § 727(d)(1) & (2). **ECF No. 9**. In its relevant part, § 727 states:

> **(d)** On request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if--
>> **(1)** such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge;
>>
>> **(2)** the debtor acquired property that is property of the estate, or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee;

*Id*. However, this statute cannot be read in a vacuum. "Discharge revocation is an extraordinary remedy," as such, the issues before this Court "should be construed liberally in favor of the debtor and strictly against those objecting to discharge." *In re Andersen*, 476 B.R. 668, 672 (Bankr. App. 1st Cir. 2012)(citing *Yules v. Gillis (In re Gillis)*, 403 B.R. 137, 144 (1st Cir. BAP 2009).

Therefore, the Court will construe § 727(d) "strictly against" plaintiff. The Court will now address each of plaintiff's argument in turn.

### A.     Plaintiff's first argument

Plaintiff's first argument is three-fold and mixes arguments under § 727(d)(1) and § 727(d)(2). **ECF No. 9.** Be that as it may, a careful review of plaintiff's brief and the record reveals that plaintiff's first argument lacks merit.

#### (i)     Inopportuneness and knowledge under § 727(d)(1)

In essence, plaintiff claims his complaint seeking revocation of the discharge was timely and, thus, improperly dismissed. In support, plaintiff contends that the "proximate cause for the filing of the adversary proceeding" was the "Indictment"[5] *per se*. In other words, plaintiff argues that notwithstanding the fact that it knew of all the allegations of fraud included in the Indictment since 2012, it was the filing of the Indictment in 2016 (**Crim. No. 16-742 (ADC)**) that triggered § 727(d)(1). This argument fails.

First of all, the Court notes that the Indictment was not based on and did not contain any charge or allegation related to defendant's filing of his petition for bankruptcy relief or the ensuing bankruptcy proceedings. Rather, the Indictment charged defendant with federal law violations for conduct that allegedly occurred years prior to defendant's bankruptcy. Therefore, the Indictment cannot be construed as evidence showing or tending to show that the "discharge

---

[5] **Crim. No. 16-742 (ADC).**

was obtained through the fraud of the debtor." 11 U.S.C. § 727(d)(1). In the Court's opinion, this is enough to dismiss plaintiff's appeal on § 727(d)(1)'s grounds, after all, the Court is called to construe the statute "strictly against those objecting to discharge." *In re Andersen*, 476 B.R. at 672;[6] *In re Bevis*, 242 B.R. 805, 808 (Bankr. D.N.H. 1999)("In essence, §§ 727(d)(1) and (d)(2) allow a court to revoke a debtor's discharge when it is shown that the debtor engaged in certain types of fraud **in connection with his or her bankruptcy case**)(emphasis added)).

Second, even if the Court entertained the idea behind plaintiff theory (*i.e.* the Indictment enabled it to seek § 727(d) relief), the Court cannot turn a blind eye to the norm that states that "[t]he party seeking revocation bears the burden of proof." *In re Andersen*, 476 B.R. at 672 (citing *Gillis*, 403 B.R. at 144). Because an indictment only contains allegations, the Indictment alone is not enough to carry the day in an action seeking an "extraordinary" relief such as revocation pursuant to § 727(d) in this case.[7] Moreover, plaintiff failed to explain why it needed a criminal Indictment (ultimately dismissed) to raise defendant's purported fraudulent scheme in Bankruptcy proceedings.

Third, even if the Court accepted that the return of a criminal indictment suffices to trigger § 727(d)(1) relief, then it would also have to accept and give equal weight to the fact that the

---

[6] Summing up its argument, plaintiff posited: "In view that a Grand Jury had determined that [defendant] incurred in fraud beyond speculation… plaintiff timely filed (sic) captioned adversary proceeding." **ECF No. 9** at 25. Even there, it is evident that plaintiff forgot about § 727(d)(1)'s first requirement, to wit, that the fraud was the reason defendant managed to obtain the discharge.

[7] Because this is not the only or main ground to deny the instant appeal, the Court need not make a final determination as to the sufficiency of a criminal indictment for purposes of Bankruptcy proceedings in general.

Indictment in this case was dismissed with prejudice under Fed. R. Crim. P. 48. Ergo, the Indictment cannot be the sole ground for a § 727(d)(1) challenge in this case as it ultimately proves nothing.

Fourth, if the Court were to reach the merits of plaintiff's argument, the appeal would still fail. Because the Indictment did not charge defendant with fraud in filing for bankruptcy or committing such an offense during the subsequent proceedings that resulted in the discharge order, logic dictates that (albeit plaintiff's questionable phrasing) what plaintiff proffers as § 727(d) triggering events are the facts alleged in the Indictment: defendant's pre-bankruptcy, alleged fraudulent conduct.[8] Accordingly, the Bankruptcy Court correctly delved into plaintiff's knowledge of the facts alleged in the Indictment to determine that plaintiff fails to meet § 727(d)(1)'s second statutory hurdle.

Section 727(d)(1) is only applicable if the "discharge was obtained through the fraud of the debtor, **and** the requesting party did not know of such fraud until **after** the granting of such discharge." (Emphasis added). Here, it is evident that plaintiff knew of the "fraud" before the discharge was granted.[9] However, plaintiff's filing errors (through counsel) foreclosed on its opportunity to timely object to the discharge. Plaintiff failed not once but twice to properly move for extensions of time to file an objection. Even after such failures, plaintiff (through new

---

[8] If the Court only considered the fact that the Indictment was filed against defendant, then the Court would need nothing than the preceding paragraphs' discussion to dismiss the instant appeal. Giving plaintiff's the benefit of the doubt, the Court will address all possible angles.

[9] It was plaintiff who provided federal law enforcement agents with the information that led to the filing of the Indictment.

counsel) filed an unsuccessful adversary proceeding within the bankruptcy case for the same purpose, to object to the discharge.

There is no reading of plaintiff's arguments and the record that would faintly suggest plaintiff meets § 727(d)(1)'s threshold.

### ii.     Knowledge of fraud under § 727(d)(2)

Plaintiff also challenges the Bankruptcy Court's reasoning standing for the proposition that "[s]everal bankruptcy courts have held that under § 727(d)(2) a party's pre-discharge knowledge of a debtor's wrongdoing under this section will effectively estop that party from seeking revocation of the discharge." Bankruptcy Court's Opinion and Order, **ECF No. 9-2** at 301. Plaintiff disagrees and argues that § 727(d)(2) relief is not barred by movant's pre-discharge knowledge of fraud.[10] Thus, plaintiff's argument seems to be that a creditor can withhold knowledge of debtor's fraud throughout the bankruptcy proceedings and years later move for revocation pursuant to § 727(d)(2) based on the fraud it knew of all along. Even if § 727(d)(2) did not include language against this practice as plaintiff argues, this Court's rules do. This scenario of blatant disregard of the orderly process of justice would constitute a serious violation of Fed. R. Civ. P 11 as well as a potential violation of 28 U.S.C. § 1927, aspects which the Bankruptcy Court is free (and encouraged) to consider in this case. *See inter alia Cruz v. Savage*, 896 F.2d 626,

---

[10] *See* **ECF No. 9** at 30: "While § 727(d)(1) requires a creditor to prove that he was unaware of the fraud prior to discharge, this requirement is conspicuously absent from § 727(d)(2)."

**Civil No. 21-1580 (ADC)**                                                                                                         **Page 12**

630 (1st Cir. 1990)("to deter dilatory and abusive tactics in litigation and to streamline the litigation process by lessening frivolous claims or defenses").

In any case, according to plaintiff there is a variety of opinions and interpretations on this issue.[11] Yet, even if the Court assumed, without deciding, that prior knowledge does not bar plaintiff's § 727(d)(2) challenge, plaintiff is still not entitled to relief under § 727(d)(2) on its merits, as discussed below.

### (iii). To acquire or become entitled to acquire property

A party seeking relief under § 727(d)(2) needs to show, *inter alia*, the debtor "acquired property that is property of the estate, or became entitled to acquire property…, and knowingly and fraudulently failed to report the acquisition of or entitlement… to the trustee." Precisely here, at the heart of § 727(d)(2), is where plaintiff's request shines the dullest.

Plaintiff argued before the Bankruptcy Court that "the fact that defendant amended his Statement of Financial Affairs to indicate an increase in income for the years [2010-2012], as a result of the plea agreement, constitutes an acquisition of property of the estate." **ECF No. 9-2** at 300-301. The same anachronic argument was raised here: "[defendant] acknowledged… that, during [2010-2012], [he] participated in a conspiracy to enrich himself by not revealing income of $181,337.39 and the nonpayment of taxes on personal expenses charged to the company Option Inc. during the pre-petition years." **ECF No. 9** at 23-24.

---

[11] "[I]t has been held that a party's predischarge knowledge of the debtor's wrongdoing under section 727(d)(2) will effectively estop that party from seeking revocation of the discharge." 6 Collier on Bankruptcy P 727.17 (16th 2022).

After analyzing the totality of the record, the Bankruptcy Court determined that it could not find anything that would "suggest that there is property acquired[,]" instead, if anything, "the amended tax returns are a result of overstated expenditures… and do not result in the acquisition of property." *Id*. Therefore, the Bankruptcy Court determined that the money "spent with the corporate [AMEX] were never available as 'property of the estate' because they were expended by the [d]efendant long before the bankruptcy petition was filed in 2014. Given that there was no property to be hidden or delivered to the trustee, § 727(d)(2) does not apply." *Id*. Plaintiff paid little attention to this touchstone-topic and focused all the discussion on ancillary issues.

On appeal, the only discernible argument raised by plaintiff against the Bankruptcy Court's findings is found in a footnote. *See* **ECF No. 9** at n.7. Without more, plaintiff simply cites 11 U.S.C. 548, § 544(b) and Puerto Rico's Civil Code to purportedly argue that defendant expenditure of the money was avoidable. However, plaintiff fails to explain how any of these statutes apply to this case. Thus, once again, plaintiff's argument falls short considering that plaintiff "bears the burden of proof." *In re Andersen*, 476 B.R. at 672. Indeed, it was plaintiff's duty to "prov[e] **each of these** elements by a preponderance of the evidence." *In re Gillis*, 403 B.R. at 144 (emphasis added); *In re Green*, BAP MB 13-061, 2014 WL 3953470, at *6 (Bankr. App. 1st Cir. Aug. 6, 2014)(plaintiff "bears the burden of proving **all of the facts upon which revocation is conditioned**")(emphasis added).

Plaintiff's perfunctory citations to federal and state law, without more, won't cut it in a civil case,[12] much less so in a case seeking "extraordinary" relief such as revocation of a discharge Order by a Bankruptcy Court pursuant to § 727(d)(2).

### B.     Plaintiff's second argument

Plaintiff's second argument challenges the Bankruptcy Court's denial of plaintiff's motion for summary judgment on the ground that the Bankruptcy Court "maintain[ed] the discharge… notwithstanding the false oaths of a convicted felon" and "by not considering [defendant]'s own contradictory positions and own admissions made under penalty of perjury." **ECF No. 9** at 32. In sum, plaintiff's second argument is based on its claim that defendant obtained a discharge Order based on "conduct that under Section 727(a) would have been sufficient to deny [defendant]'s discharge, such as the debtor knowingly and fraudulently making a false oath in connection with his bankruptcy case… § 727(a)(4)(A)." *Id*., at 34-35. If a violation under § 727(a)(4)(A) was found, the argument goes, then "revocation under § 727(d)(2)" would be proper. *Id*. (emphasis added).

Notably, in its appeal plaintiff alters its previous line of argument in order to gain a pyrrhic advantage. **ECF No. 9-1** at 183-189. In Bankruptcy Court proceedings plaintiff logged its argument for revocation under § 727(a)(4)(A) via § 727(d)(1). Here, it does under § 727(d)(2).

---

[12] *See Krowel v. Arcuri*, 631 B.R. 356, 363 (Bankr. App. 1st Cir. 2021)(citing *DiVittorio v. HSBC Bank USA, NA*, 670 F.3d 273, 288-89 (1st Cir. 2012))("The First Circuit regularly ha[s] considered such perfunctory arguments to be waived, warning [i]t is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." (internal quotation marks omitted)).

Indeed, in the bankruptcy proceedings plaintiff unsuccessfully stressed "[w]hen a section 727(d)(1) revocation… is based on Section 727(a)(4)(A), the elements partially merge." *Id.*, at 184. Moreover, plaintiff concluded, "[d]efendant's discharge should be revoked under the provisions of § 727(d)(1)." *Id.*, at 185.

Because plaintiff channels its § 727(a)(4)(A) argument via § 727(d)(2) for the first time in appeal, the argument is deemed waived. "Save in exceptional cases, only those issues that are squarely presented and litigated in the trial court may be raised on appeal." *In re Net-Velázquez*, 625 F.3d 34, 40 (1st Cir. 2010). Interpreting that plaintiff's § 727(a)(4)(A) argument spills over to other sections of plaintiff's motion for summary including § 727(d)(2) discussion would be a stretch in a case seeking "extraordinary" relief. "Simply noting an argument in passing without explanation is insufficient to avoid waiver." *DiMarco–Zappa v. Cabanillas*, 238 F.3d 25, 34 (1st Cir. 2001).

Even if this argument was not deemed waived, it does not hold water. Notably, throughout plaintiff's discussion of its second argument it is evident plaintiff failed to explain how it meets § 727(d)(2). *See* **ECF No. 9** at 32-48.

First, as discussed before, the Bankruptcy Court correctly pointed out that "the amended tax returns are a result of overstated expenditures… and do not result in the acquisition of property." **ECF No. 9** at 23-24. Consequently, monies "spent with the corporate [AMEX] were never available as 'property of the estate' because they were expended by the [d]efendant long

before the bankruptcy petition was filed in 2014. Given that there was no property to be hidden or delivered to the trustee, § 727(d)(2) does not apply." *Id*.

Second, the Bankruptcy Court pointed out several opinions supporting its holding that § 727(d)(2) only applies to acquisitions of property (or entitlement) **after** the filing of a petition for bankruptcy relief, not before. The Bankruptcy Court cited *Hurston v. Anzo (In re Anzo)*, 2017 Bankr. LEXIS 259, *10("only post-petition conduct in connection with the Debtor's bankruptcy case is relevant and this Court finds that this applies to Section 727(d)(2), as well."); *All Points Capital Corp. v. Stancil (In re Stancil)*, No. 11 00351-8-JRL, 2012 Bankr. LEXIS 4323, 2012 WL 4116505 (Bankr. E.D.N.C. Sept. 18, 2012) (finding Section 727(d)(2) only allowed revocation for post-petition conduct in debtor's bankruptcy case).

Moreover, § 727(d)(2) has been construed to "impose[] a duty upon the debtor to report to the trustee any acquisitions of property **after** the filing of the petition." 6 Collier on Bankruptcy P 727.17 (16th 2022)(emphasis added). Therefore, everything points to the correctness of the Bankruptcy Court's holding.

On the other hand, it is worth pointing out that plaintiff did not controvert these authorities. The Court agrees with the Bankruptcy Court's findings and holding. Thus, assuming *in arguendo* that plaintiff's theory of fraud under § 727(a)(4)(A) was correct and sufficient, it is still not viable under § 727(d)(2) simply because, in addition to § 727(a)(4)(A)'s elements, plaintiff needs to meet § 727(d)(2)'s bar. As discussed before, § 727(d)(2)'s bar requires plaintiff to show, *inter alia*, that "the debtor acquired property that is property of the estate, or became entitled to

**Civil No. 21-1580 (ADC)**                                                                                      Page 17

acquire property that would be property of the estate." § 727(d)(2). Such acquisition must be after the filing of the petition for bankruptcy relief. *See Hurston v. Anzo (In re Anzo)*, 2017 Bankr. LEXIS 259, *10. Because the purported acquisition of property by defendant occurred before defendant filed for bankruptcy relief, § 727(d)(2) does not apply.

For all the above, having dispelled all arguments presented by plaintiff and after a careful review of the record, this Court **AFFIRMS** Bankruptcy Court's Opinion and Order at **ECF No. 9-2** denying plaintiff's motion for summary judgment. Clerk of Court shall issue judgment accordingly.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 28th day of September, 2022.

**S/AIDA M. DELGADO-COLÓN**
**United States District Judge**